Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY VAN KIRK ROBBINS d.b.a. THE END, | CASE NO. SACV 01-1032-JTL |
| Plaintiff, | ORDER RE FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO FED. R. CIV. P. 52 |
| v. | |
| CHRISTOPHER LEE, | |
| Defendant. | |

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court hereby makes the following findings of fact and conclusions of law following the parties' non-jury trial before this Court:

**FINDINGS OF FACT**

1. Beginning in July 1994, a group of individuals, including Chun Y. Lee, Barry Howard, Peter Park, Stephen Yum, plaintiff Wesley Van Kirk Robbins, and defendant Christopher Lee, agreed to form a non-profit Korean-American museum and cultural center to promote Korean heritage and culture in the Los Angeles area and reinforce the existing Korean-American ties between the United States and Korea.

2. On or about July 12, 1994, defendant Lee applied for a fictitious name statement for the Korean American Museum of Art and

Cultural Center.

3. On or about August 29, 1994, the individuals involved in the project decided that the official acronym of the organization would be "KOMA."

4. From the outset, it was agreed upon by all the individuals who were involved in the project, including plaintiff, that any services they provided to KOMA would be on a volunteer basis.

5. At least three of the individuals, Peter Park, Stephen Yum, and plaintiff, signed a letter agreement on or about November 15, 1994, that memorialized their intent to volunteer their services to KOMA.

6. On or about September 22, 1994, the non-profit corporation, Korean American Arts and Cultural Center, Inc., was formed and began operating as a duly organized non-profit corporation under the laws of the State of California.

7. Beginning in or about July 1994, the members of KOMA, which included plaintiff, began to organize a world-wide architectural design competition ("Competition") seeking entries of architectural designs for the KOMA building.

8. The grand prize winner of the Competition would receive $50,000 and the right to claim the architectural commission to complete the design of KOMA.

9. At some point after KOMA was formed, plaintiff, who had been named a "professional advisor" to the Competition, became increasingly unhappy with the other members of KOMA and defendant Lee.

10. Some of the issues about which plaintiff complained included: (1) the submissions were being sent to the KOMA offices and not to plaintiff personally; (2) there were changes made to the

Competition's program without plaintiff's approval; and (3) plaintiff was not present to review the final proof of the program before the printer printed the programs to send out to the participants.

11. The relationship between plaintiff and KOMA worsened. Plaintiff began to insist that he had never volunteered his services and that he should be paid for his efforts.

12. In September 1994, there were discussions between plaintiff and defendant Lee regarding whether KOMA should compensate plaintiff for his services.

13. Thereafter, defendant Lee, on behalf of KOMA, offered to pay plaintiff $10,000 for his services. KOMA and plaintiff, however, never reached or executed a final agreement regarding the amount of compensation to be paid to plaintiff.

14. Mr. Lee continued to attempt to resolve the dispute, reminding plaintiff that he had agreed to work as a volunteer, and directing plaintiff's attention to the November 15, 1994 letter agreement.

15. On approximately November 23, 1994, Color West, Inc. printed the KOMA program. On or about December 1, 1994, the KOMA Competition program was mailed out to participants. Plaintiff was upset that he was not present for the final proof of the program, although he had been notified of the time and place so that he could be present.

16. Defendant Lee reasonably relied on plaintiff's representations that any services he provided to KOMA were volunteered, including the preparation of the KOMA program. At one time, plaintiff even recommended to defendant Lee that defendant Lee, not plaintiff, register KOMA as a trademark. He told defendant Lee that it would cost $200 and take six months for the trademark

3

1 | registration process.

17. Due to plaintiff's behavior, the other members of KOMA decided that plaintiff's services and his position as "professional advisor" were no longer necessary, and plaintiff was so informed.

18. The dispute escalated, and by December 1994, plaintiff was demanding that KOMA return his "property" and accusing KOMA of infringing his copyright.

19. In January 1995, plaintiff sent defendant Lee, as chairman of KOMA, an invoice for work that plaintiff had performed from September 1994 through January 1995.

20. On or about January 5, 1995, a Question and Answers Statement was mailed out to all participants in the KOMA competition.

21. The members of KOMA agreed that plaintiff's name should be removed from any KOMA materials printed in the future and participants would be informed of plaintiff's departure.

22. On or about March 4, 1995, KOMA held its world-wide design competition. The Competition had over 1600 entries, and a panel of architects served as the judges.

23. On or about March 4, 1995, En-Seok Lee was chosen as the winner, and prizes for the top entries were awarded.

24. Due to unforeseen circumstances, loss of sponsorship, and other related problems, KOMA and its goals were never realized.

25. The corporate and financial records show that KOMA was ultimately a financial loss. Additionally, defendant Lee did not profit from KOMA or the Competition. Defendant Lee invested approximately $25,000 of his own monies in KOMA, which he did not recoup.

///

26. On or about June 23, 1995, plaintiff obtained a Certificate of Copyright Registration (No. TXu 681-835) for the KOMA Program.

27. Since September 24, 1997, the date on which plaintiff filed this action, KOMA has not engaged in any further business. On November 21, 1999, KOMA filed for Chapter 7 bankruptcy. The Chapter 7 Trustee ultimately closed the case as a "no asset case."

28. With respect to whether plaintiff is estopped from bringing this action, plaintiff knew of defendant Lee's allegedly infringing conduct. Second, plaintiff, by his actions and words, caused defendant Lee to believe that plaintiff would volunteer his services, including the creation of the KOMA program and poster. Third, because plaintiff had initially agreed to be a volunteer and then later signed the letter agreement affirming his status as a volunteer, defendant Lee was ignorant of the true facts at the time of the infringing conduct, i.e., that plaintiff was claiming he owned the copyright to the KOMA program and would not allow KOMA to use the program for the Competition. Fourth, defendant Lee detrimentally relied on plaintiff's representations.

29. Plaintiff's statements regarding the damages he allegedly suffered are speculative and unsupported by any evidence. Plaintiff's claims for damages for the alleged loss of his reputation and for a coffee table book that he had not yet written are not substantiated by any competent or admissible evidence.

30. Defendant Lee was a credible witness and his statements at trial were supported by other evidence.

///
///
///

5

## CONCLUSIONS OF LAW

**A.  Elements of Infringement**

1. To prevail on a copyright infringement claim, a plaintiff must prove both ownership of a valid copyright and copying of constituent elements of the work that are original. Feist Publications v. Rural Telephone Service Co., 499 U.S. 340, 361, 111 S.Ct. 1282 (1991); 4 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer") § 13.01 (2006).

2. The issuance of a certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright. See 17 U.S.C. § 410(c); 4 Nimmer § 13.01, at 13-7.

3. The prima facie presumption of copyright validity that accompanies a registration certificate is rebuttable. 4 Nimmer § 13.01, at 13-7.

**B.  Copyrightable Material**

1. Copyright protection subsists in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. 17 U.S.C. § 102(a).

2. The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material. See 17 U.S.C. §

103(b).

3. In any judicial proceeding, the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court. 17 U.S.C. § 410(c).

4. The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, protection may extend to only those components of a work that are original to the author. Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. Feist, 499 U.S. at 348, 350.

C. **Equitable Estoppel**

1. Principles of estoppel applicable elsewhere in the law are equally applicable to copyright infringement actions. 4 Nimmer § 13.07, at 13-281.

2. Four elements must be present to establish the defense of estoppel: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that his conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must have relied on the former's

conduct to his injury. Hampton v. Paramount Pictures Corp., 279 F.2d 100, 104 (9th Cir.), cert. denied, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); see Field v. Google, Inc., 412 F. Supp. 2d 1106, 1116-1117 (D. Nev. 2006); 4 Nimmer § 13.07, at 13-281.

3. Equitable estoppel may deprive a plaintiff of an otherwise meritorious copyright infringement case. Service & Training, Inc. v. Data General Corporation, 963 F.2d 680, 689 (4th Cir. 1992).

4. A plaintiff is estopped from asserting a copyright claim if he has aided the defendant in the acts of alleged infringement, or has induced or caused the defendant to perform such acts. 4 Nimmer § 13.07, at 13-282; see also Quinn v. City of Detroit, 23 F. Supp. 2d 741, 753 (E.D. Mich. 1998); cf. Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003) (where copyright owner was an employee who previously consented to employer's exploitation of the subject work, the copyright owner is estopped from complaining later about the company's continued usage of his work).

5. With respect to the last element, ensuing litigation establishes prejudice to defendant. See Hadady Corp. v. Dean Witter Reynolds, Inc., 739 F. Supp. 1392, 1400 (C.D. Cal. 1990).

D. **Joint Work**

1. A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101.

2. Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work. 17 U.S.C. § 201(a).

3. Focusing on whether the putative joint authors regard themselves as joint authors is especially important where one person is indisputably the dominant author of the work. Childress v. Taylor, 945 F.2d 500, 508 (2d Cir. 1991).

### E. Profitability and Apportionment

1. If copyright infringement is found, the party responsible is liable for damages and profits. See Sheldon v. Metro-Goldwyn Pictures, Corp., 309 U.S. 390, 399, 60 S.Ct 681, 683 (1940). The purpose of the Copyright Act is to provide just compensation for the wrong, not to impose a penalty by giving to the copyright proprietor profits which are not attributable to the infringement. Id.

2. The profits, therefore, which the infringer must account for, are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's copyright; or, in other words, the fruits of the advantage which he derived from the use of that copyright, over what he would have had in using other means then open to the public and adequate to enable him to obtain an equally beneficial result. If there was no advantage in his use of the plaintiff's copyright, there can be no decree for profits, and the plaintiff's only remedy is by an action at law for damages. Id. at 400. An infringer is allowed to deduct actual costs incurred from proceeds before determining any profits. Id. at 401; see also 17 U.S.C. § 504.

3. In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a) . . . an action instituted under section 411(b), no award of

9

statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for —

>   (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
>   (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. See Johnson v. University of Virginia, 606 F. Supp. 321, 324 (W.D. Va 1985); Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1025-26 (N.D. Cal. 2003).

**F.    Piercing the Corporate Veil**

   1. Defendant is entitled to judgment on the claim of "piercing the corporate veil" as plaintiff has failed to demonstrate sufficient facts to establish that the corporate entity was used in any improper manner, as set forth below.

   2. A decision to pierce the corporate veil rests on three issues: (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. Board of Trustees v. Valley Cabinet & Mfg. Co., 877 F.2d 769, 772 (9th Cir. 1989).

   3. Serious abuse of the corporate identity can be established by a number of methods, including (1) commingling of funds between the alter ego entities, (2) the parent's treating of the subsidiary's assets as its own, and (3) the subsidiary's owning less than an

adequate amount of assets to carry on its business. See <u>Seymour v. Hull & Moreland Engineering</u>, 605 F.2d 1105, 1112 (9th Cir. 1979).

4. Common ownership alone is insufficient to support disregard of the corporate form. <u>Chan v. Societe Expeditions</u>, 123 F.3d 1287, 1294 (9th Cir. 1997).

## G. SUMMARY OF CONCLUSIONS OF LAW

1. Plaintiff has a valid copyright in the KOMA program. Defendant Lee has not rebutted the presumption of copyrightable material implied from the certificate of registration.

2. Defendant Lee did not establish that plaintiff and defendant Lee were joint owners of the KOMA program.

3. Defendant Lee, on behalf of KOMA, used constituent elements of the copyrighted work in the KOMA program that was distributed to the participants of the Competition.

4. There is no evidence that defendant Lee acted outside the scope of his corporate duties and obligations during the relevant time period that KOMA was in existence. Furthermore, there is no evidence that defendant Lee used any of KOMA's corporate assets or funds for his own personal use. KOMA maintained separate bank accounts, corporate minutes, and a board of directors.

5. Plaintiff has not established that KOMA operated as an alter ego of defendant Lee.

6. Even though defendant Lee and KOMA may have used copyrightable elements in the KOMA program, plaintiff is estopped from asserting a copyright infringement claim against defendant Lee.

7. Plaintiff has failed to establish that he suffered any

actual damages or that defendant Lee or KOMA profited from the infringement of plaintiff's copyrighted work.

8.  Because the copyright registration was not obtained until June 23, 2005, plaintiff is not entitled to any statutory damages because the copyright was not registered within three months of the first publication of the copyrighted work. Thus, plaintiff has failed to establish any recoverable damages under the Copyright Act.

**IT IS SO ORDERED.**

Dated:  September 29, 2006

JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

12